IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**JUVAN BROWN,**

      **Petitioner,**

v.                                              **Case No.: 5:24-cv-00035**

**WARDEN W. HOLZAPFEL,**

      **Respondent**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Juvan Brown filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, requesting the application of time credits earned under the First Step Act and the expungement of a juvenile criminal conviction. (ECF No. 1). Pending before the Court are Brown's motion to expunge his juvenile conviction, (ECF No. 4), and a motion to dismiss contained in the Warden's Response. (ECF No. 9). This case is assigned to the Honorable Frank W. Volk, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that Respondent's motion to dismiss, (ECF No. 9), be **GRANTED**; that Brown's § 2241 petition, (ECF No. 1), and motion for expungement, (ECF No. 4), be **DENIED**; and this matter be **DISMISSED** and **REMOVED** from the docket of the court.

1

I.      **Relevant History**

Brown is a federal inmate incarcerated in Federal Correctional Institution Beckley, with a projected release date of June 03, 2025. *See* Federal Bureau of Prisons ("BOP") Inmate Locator, https://www.bop.gov/inmateloc/. Brown filed the instant petition on January 15, 2024.[1] (ECF No. 1 at 9). In his petition, Brown states that the BOP is unlawfully refusing to apply his time credits earned under the First Step Act ("FSA"). (ECF No. 1 at 6). Brown's recidivism risk level is medium, and he argues that nothing in the FSA precludes him from immediately applying his earned time credits. (*Id.*). He denies that he would be a danger to society if released and argues that he has made a good faith effort to lower his recidivism risk score. (*Id.* at 7). Brown also contends that he is "erroneously receiving 2 points for a SOPSF[2] from 31 yrs ago when [he] was a juvenile." (*Id.*). He continues: "I earned 365 days of FSA credits and should be able to apply them towards my release date, but because of a PSF I was denied." (*Id.*). He states that his recidivism risk level could be low rather than medium "if the PSF was waived." (*Id.*). He argues that the prior sex offense should not count, because he committed the crime when he was a juvenile, and only adult convictions are considered. (*Id.*). Brown requests that the Court apply his earned FSA time credits. (*Id.* at 8). Additionally, he asks the Court to expunge the juvenile sex offense conviction from his criminal record. (*Id.*). Brown later filed the formal motion to expunge his juvenile record, complaining that the conviction is preventing his release from federal prison and something he did as a minor should not adversely affect the rest of his life. (ECF No. 4 at 1).

---

[1] Brown filed a nearly identical petition several weeks later which added information about his attempts to exhaust administrative remedies, Case No. 5:24-cv-00062.

[2] "SOPSF" seemingly refers to "Sex Offender Public Safety Factor." (*See* ECF No. 9 at 1).

2

On March 20, 2024, Respondent filed a Response, arguing that Brown's petition should be dismissed for multiple reasons. (ECF No. 9). First, Respondent notes that Brown has failed to exhaust his administrative remedies, warranting dismissal. (*Id.* at 9). Second, Brown is not eligible to apply his FSA time credits, because he is at a medium recidivism risk level. (*Id.* at 11). Third, Brown has no protected liberty interest in either his security classification or in early release under the FSA. (*Id.* at 12, 18). Fourth, 18 U.S.C. § 3625 prohibits judicial review of release eligibility determinations made under the FSA. (*Id.* at 14). And finally, Respondent argues that Brown has not established that the Court has jurisdiction over his request to expunge his state juvenile conviction. (*Id.* at 19). Respondent attached Brown's FSA Recidivism Risk Assessment, which shows that Brown is receiving two points for "Walsh w/ Conviction", with a total general score of 41 points and a total violent score of 22 points. (ECF No. 9-1 at 6–7). Respondent also attached Brown's administrative remedy records, (ECF No. 9-1 at 9–13), and a declaration by a BOP paralegal, stating that Brown was most recently assessed to be at a medium risk of recidivism and explaining that Brown has not exhausted his administrative remedies. (ECF No. 9-1 at 2–4). Although he was given an opportunity to file a reply memorandum, (ECF Nos. 6, 10), Brown chose not to do so.

II. **Standard of Review**

Because Respondent filed a Response concurrently with the motion to dismiss, the motion technically is one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion to dismiss under Rule 12(c) applies the same standard of review as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12 (b)(6), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-

3

3335, 2018 WL 2135009, at *1 (D. Md., May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a Rule 12(c) motion in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, without converting the motion into one for summary judgment. *Id*. The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the [petition] and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. Discussion

Respondent argues that Brown's petition should be dismissed because he failed to exhaust his administrative remedies. (ECF No. 9 at 9–11). Because Brown's petition can easily be dismissed on the merits, the undersigned will not address the issue of exhaustion.

#### A. *Application of FSA Time Credits*

The First Step Act created a system for federal inmates to earn time credits for participating in evidence-based recidivism reduction ("EBRR") programs while

incarcerated. 18 U.S.C. § 3632(d)(4)(A). Most inmates are eligible to earn FSA time credits throughout their term of incarceration, but those credits may only be applied to an inmate's sentence once certain criteria are met. *See* 18 U.S.C. §§ 3632(d)(4), 3624(g). To apply the earned time credits, a prisoner must have (A) earned time credits equal to the remainder of the imposed term of imprisonment, (B) shown a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk during the term of imprisonment, (C) had the remainder of the imposed term of imprisonment computed, and (D) been assessed to be a minimum or low recidivism risk level at the most recent assessment, or the two most recent assessments. *See* 18 U.S.C. § 3624(g)(1)(A)–(D). Brown argues in his petition that he is currently eligible to apply his time credits, because he is at a medium recidivism risk level, and nothing in the statue precludes him from applying his time credits. (ECF No. 1 at 6). Brown is clearly incorrect, under the plain language of the statute—only inmates with minimum or low recidivism risk levels are automatically eligible to apply their FSA time credits.

If a prisoner does not have a minimum or low recidivism risk level, he must petition the Warden for individual approval of the application of his earned time credits. 18 U.S.C. § 3624(g)(1)(D)(i)(II); 28 C.F.R. § 523.44(c)(2); *Delgado v. Barraza*, No. 3:23-CV-881, 2023 WL 4553380, at *1 (M.D. Pa., July 14, 2023) ("Inmates with a high or medium PATTERN score can petition the warden to be considered on an individualized basis for placement in prerelease custody or supervised release."). The Warden may only approve the application of the time credits after determining that the prisoner would not be a danger to society if released, has made a good faith effort to lower his recidivism risk, and is unlikely to recidivate. 18 U.S.C. § 3624(g)(1)(D)(II)(aa)–(cc). Other courts have found that these decisions are generally discretionary and not subject to judicial review. *See*

*Mars v. Heisner*, No. CV2201933PHXSPLJZB, 2023 WL 4977335, at *5 (D. Ariz., June 26, 2023), *report and recommendation adopted*, No. CV2201933PHXSPLJZB, 2023 WL 4960411 (D. Ariz., Aug. 3, 2023) (explaining that, because the judicial review provisions of the Administrative Procedure Act do not apply to decisions made under 18 U.S.C. § 3624, courts may not review a BOP decision declining to apply earned time credits, unless the decision is contrary to established federal law, violates the Constitution, or exceeds the BOP's statutory authority); *Walker v. Fikes*, No. 2:22-CV-41, 2023 WL 4004123, at *2 (S.D. Ga., May 16, 2023), *report and recommendation adopted*, No. 2:22-CV-41, 2023 WL 3997068 (S.D. Ga., June 14, 2023) (stating that decisions made pursuant to 18 U.S.C. § 3624(g) are not subject to judicial review unless those decisions were outside its statutory authority). Because Brown is at a medium risk of recidivism level, and he has not had a petition to apply time credits approved by the Warden, the undersigned **FINDS** that he is not eligible for the application of his FSA time credits.

Brown also challenges his recidivism risk level; he claims that his recidivism risk level could be low instead of medium if not for a juvenile sex offense conviction from 31 years ago. (ECF No. 1 at 7).[3] A prisoner's recidivism risk level is determined by their PATTERN score—the Prisoner Assessment Tool and Targeting Estimated Risk and Needs. (ECF No. 9 at 3). For males, PATTERN includes 15 factors: an inmate's current age; whether he has a Walsh conviction and/or committed a violent offense; his criminal history points; history of escapes and/or violence; education score, such as whether the

---

[3] Brown repeatedly refers to a "PSF" being the reason that his FSA time credits have not been applied, (ECF No. 1 at 7), but it appears Brown is misusing BOP terminology. The BOP uses Public Safety Factors, or PSFs, to determine the appropriate facility in which to house an inmate; for example, an inmate with a prior sex offense conviction cannot be housed in a minimum security facility. However, PSFs have no relation to an inmate's recidivism risk level and no effect on the application of FSA time credits. *See* https://www.bop.gov/policy/progstat/5100_008.pdf (last accessed June 3, 2024). Brown does not challenge his security classification, only his PATTERN score and recidivism risk level.

6

inmate is enrolled in a GED program or has the equivalent of a high school diploma; completion of drug treatment programs; all incident reports in the past 120 months, whether any were serious, and time period since last incident report; whether the inmate agreed to participate in the financial responsibility program; and the number of eligible activities and work programs the inmate completed.[4] Each factor is assigned a certain point value, which results in a general recidivism risk score and a violent recidivism risk score. (*Id.*) A prisoner's PATTERN scores place him in one of four recidivism risk categories: minimum, low, medium, or high. (ECF No. 9 at 4). The recidivism risk level, in turn, determines whether the prisoner is eligible to apply his earned FSA time credits.

According to Brown's FSA Recidivism Risk Assessment, his general score is 41, and his violent score is 22, putting him in the medium recidivism risk category. (ECF No. 9-1 at 6). Brown disputes one of the considerations impacting his recidivism risk—the 31-year old sex offense conviction imposed when Brown was a juvenile. (ECF No. 1 at 7). Brown refers to the offense as a battery, but records from the sentencing court indicate the conviction involved the sexual touching of a female at a high school in 1993. *United States v. Brown,* 2:17-cr-0007-PPS-JEM-1, (N.D. Ind., Nov. 29, 2023), ECF No. 65. This conviction resulted in the "Walsh w/ Conviction" factor being marked "TRUE" on Brown's PATTERN worksheet, adding two points to Brown's general recidivism risk score. (ECF No. 9-1 at 6). This comports with BOP Policy Statement 5394.01, which indicates that an inmate with a conviction resulting from unlawful sexual conduct will be designated as having a "Walsh Act History with Conviction."[5] Under this Policy Statement, the nature

---

[4] Male Pattern Risk Scoring chart at www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3, (last accessed June 3, 2024).

[5] https://www.bop.gov/policy/progstat/5394.01.pdf (last accessed June 3, 2024).

7

of the offense conduct is relevant, not the actual conviction; for example, a defendant who pleads guilty to assault but committed rape will be marked as "Walsh Act History with Conviction." *Id.* Thus, Brown's battery conviction, which involved the sexual touching of a female, qualifies as unlawful sexual conduct, and the application of the "Walsh w/ Conviction" factor in his FSA Recidivism Assessment appears to be proper.

Brown argues that his conviction should not contribute towards his PATTERN score, because it occurred when he was a juvenile, not an adult. (ECF No. 1 at 7). He states, "juvenile adjudications are not considered and if the prior conviction is a state offense, the state offense must match the specific federal offense element-by-element." (*Id.*). Brown does not cite any sources for this proposition, and the undersigned cannot find any sources stating that, in assessing an inmate's recidivism risk, the BOP may not consider juvenile convictions and is limited to considering state offenses which match the elements of a federal offense. Brown may be referring to the United States Sentencing Guidelines, which feature similar rules that apply when the sentencing court determines a defendant's criminal history score and career offender status. *See* U.S.S.G. § 4A1.1(b), Application Note 2 (stating that juvenile adjudications are only counted towards a defendant's criminal history under certain circumstances); *United States v. Green*, 996 F.3d 176, 180 (4th Cir. 2021) (explaining that, in applying the career offender sentencing guideline, U.S.S.G. § 4B1.1, the categorical approach requires courts to examine whether the statutory elements of the offense match the definition in the sentencing guidelines). But those rules only apply to the sentencing court's calculation of a defendant's guideline sentencing range; they do not carry over to the BOP's determination of an inmate's recidivism risk. Moreover, Brown has not supplied any reason why the same limitations *should* apply to both—the considerations of a court imposing a defendant's sentence are

8

not identical to the considerations of the BOP in determining an inmate's risk of recidivism at any point in time over the course of his prison term. Accordingly, the undersigned **FINDS** that, based on existing BOP policy, Brown's PATTERN score and recidivism risk level appear to have been properly calculated, accounting for his prior sex offense.

Even if Brown could show that his recidivism risk level was miscalculated, the undersigned **FINDS** that 18 U.S.C. § 3625 prohibits judicial review of a prisoner's PATTERN score or recidivism risk level. As Respondent notes, 18 U.S.C. § 3625 excludes from judicial review "any determination, decision, or order" made under Chapter 229, subchapter C—§§ 3621–3626. (ECF No. 9 at 16). This subchapter includes the implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h), and the BOP's eligibility determinations with respect to the application of FSA time credits. 18 U.S.C. § 3624(g)(1). Following § 3625, several courts have found that PATTERN scores and recidivism risk levels are not subject to judicial review. *See Bradford v. Warden*, No. 2:23-CV-00139-JPH-MJD, 2024 WL 1676787, at *3 (S.D. Ind., Apr. 17, 2024) ("[N]o constitutionally protected liberty interest is violated when the BOP calculates a prisoner's PATTERN score and resulting recidivism risk level under the FSA."); *Hicks v. Heckard*, No. 5:23-CV-00581, 2024 WL 833190, at *6 (S.D.W. Va., Feb. 1, 2024), *report and recommendation adopted*, No. 5:23-CV-00581, 2024 WL 818472 (S.D.W. Va., Feb. 27, 2024); *Nevel v. Brown*, No. 5:23-CV-285, 2023 WL 8505881, at *6 (N.D.W. Va., Oct. 27, 2023), *report and recommendation adopted*, No. 5:23-CV-285, 2023 WL 7490046 (N.D.W. Va., Nov. 13, 2023); *Newell v. Fikes*, No. 2:22-CV-53, 2023 WL 2543092, at *2 (S.D. Ga., Feb. 21, 2023), *report and recommendation adopted*, No. 2:22-CV-53, 2023 WL 2541126 (S.D. Ga., Mar. 16, 2023). Therefore, even if Brown could identify an error in

9

his PATTERN score and resulting recidivism risk level, he would not be able to challenge that error in court. Accordingly, the undersigned **FINDS** that Brown's request to apply his FSA time credits and his challenge to his recidivism risk score are without merit.

### B. *Expungement of Juvenile Conviction*

Brown also requested in his petition that this Court expunge his juvenile conviction, and he filed a separate motion requesting the same. (ECF Nos. 1 at 8, 4 at 1). Brown argues that "what [he] did as a minor shouldn't adversely affect the rest of [his] adult life." (ECF No. 1 at 8). Federal courts are courts of limited jurisdiction; they may only hear cases as authorized by federal statute and the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There is no federal statute or regulation that gives district courts general authority to expunge state court convictions. In the absence of any general federal expungement statute, the power of federal courts to expunge convictions is a limited equitable power, reserved only for "exceptional circumstances." *Allen v. Webster*, 742 F.2d 153, 155 (4th Cir. 1984). Brown has not alleged any such exceptional circumstances. He merely regrets that his prior conviction is impacting the execution of his current federal sentence. Brown does not suggest that his state conviction was illegal or unconstitutional, or that the record of his conviction was a clerical error. The Court has no authority to expunge Brown's valid conviction. *See United States v. Dunegan*, 251 F.3d 477, 480 (3rd Cir. 2001) ("[I]n the absence of any applicable statute enacted by Congress, or an allegation that the criminal proceedings were invalid or illegal, a District Court does not have the jurisdiction to expunge a criminal record, even when ending in an acquittal."); *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000) (Finding that "district courts possess ancillary jurisdiction to expunge criminal records," but that such jurisdiction is "limited to expunging the record of an unlawful

arrest or conviction, or correcting a clerical error); *see also United States v. Thompson*, No. CRIM. HNM 95-0172, 2012 WL 2992366, at *2 (D. Md. July 19, 2012) (dismissing defendant's motion for expungement where defendant did not assert his arrest or conviction was unlawful). Brown acknowledges in his petition and motion that most states have a procedure to expunge juvenile convictions. (ECF No. 1 at 8, 4 at 1). If Brown wishes to have his conviction expunged, he must take advantage of that procedure in whichever state he was convicted. *See Martin–El v. Maryland*, Civ. No. JFM–11–3044, 2011 WL 5513241, at *3 (D. Md. Nov.9, 2011) (finding that petitioner was required to pursue his request for expunction of state court conviction in state court). Accordingly, the undersigned **FINDS** that Brown's motion for expungement must be denied for lack of jurisdiction.

## IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings proposed herein and **RECOMMENDS** that Respondent's motion to dismiss, (ECF No. 9), be **GRANTED**; that Brown's § 2241 petition, (ECF No. 1), and motion for expungement, (ECF No. 4), be **DENIED**; and this matter be **DISMISSED** and **REMOVED** from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the

Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED**: June 5, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge